**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gabriel VAVAGES, Defendant–Appellant.**

Nos. 97–10394.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 1998.

Decided Aug. 3, 1998.

Rubin Salter, Jr., Tucson, Arizona, for the defendant—appellant.

Jerry R. Albert, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee.

Before: HALL and THOMAS, Circuit Judges, and MOSKOWITZ, District Judge.*

CYNTHIA HOLCOMB HALL, Circuit Judge:

Gabriel Vavages appeals his jury trial conviction for possession with intent to distribute marijuana in violation of 21 U.S.C. § 841. We reverse and remand for retrial.

## BACKGROUND

On May 24, 1996, a Tohono O'Odham police officer observed a beige colored sedan traveling at a high rate of speed, weaving, and straddling the highway's center dividing line. The officer stopped the vehicle after a short chase and discovered large quantities of marijuana inside. The four occupants of the vehicle took off on foot, and the officer was only able to apprehend one person, John D. Adams. Adams first stated that "Gabe," presumably defendant Gabriel Vavages, was in the car, then recanted the statement several hours later. The officer subsequently identified Vavages as the driver of the vehicle.

Tribal officers found a tribal enrollment card and a pager belonging to Vavages inside the vehicle, and U.S. Customs agents traced ownership of the vehicle to Vavages. The agents eventually located Vavages, and he was arrested and charged with conspiracy to possess and possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846.

Prior to trial, Vavages filed a notice of intention to offer the defense of alibi and disclosed that his alibi witnesses would include Rose Marie Manuel, his common law wife, as well as Manuel's adult sister, his minor children, and several codefendants. On the first day of trial, the district court learned through Manuel's attorney that she would be invoking the Fifth Amendment privilege against self-incrimination. The district court recognized Manuel's blanket invocation of the Fifth Amendment but, following Vavages' conviction, sua sponte held a hearing to consider whether the prosecutor had coerced Manuel into refusing to testify. The court determined that the prosecutor had engaged in "intimidating" and "troublesome" conduct in threatening to file perjury charges and to withdraw Manuel's plea agreement in an unrelated prosecution in the event she testified in support of Vavages' alibi defense. Nonetheless, the court found that the prosecutor's conduct had not prejudiced Vavages' defense.

Vavages stood by his alibi defense at trial. Codefendants Jeffrey Joe Valenzuela and Sanford Albert Serapo testified that they had borrowed the beige sedan from Vavages and that Vavages had not been in the vehicle when it was pulled over by the police. Vavages also testified that he had loaned his vehicle to Valenzuela, and Vavages' young children testified in support of their father's alibi defense.

* Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

At the close of the government's case, the district court dismissed the conspiracy count of Vavages' indictment. The jury subsequently convicted Vavages on the remaining count of possession with intent to distribute marijuana, and the court sentenced Vavages to ten years of imprisonment followed by eight years of supervised release.

## DISCUSSION

### I

Vavages first contends that the prosecutor coerced Rose Marie Manuel, Vavages' common-law wife, into refusing to testify in his defense. Without the prosecutor's interference, Vavages suggests, Manuel would have testified that Vavages had lent his car to codefendant Valenzuela and remained at home on the night he was alleged to have participated in the charged drug offense.

■■■ It is well established that "substantial government interference with a defense witness's free and unhampered choice to testify amounts to a violation of due process." *United States v. Little*, 753 F.2d 1420, 1438 (9th Cir.1984). A defendant alleging such interference is required to demonstrate misconduct by a preponderance of the evidence. *See United States v. Lord*, 711 F.2d 887, 891 n. 3 (9th Cir.1983). Whether substantial government interference occurred is a factual determination to be made by the district court that we review for clear error. *See United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir.1993); *Little*, 753 F.2d at 1439.

### A.

The alleged misconduct in this case concerns comments made by the prosecutor in Vavages' criminal case to counsel for witness Manuel. When Vavages filed his notice of intention to offer an alibi defense, Manuel's name was included on the list of witnesses he would call. A government agent subsequently interviewed Manuel about Vavages' alibi. Manuel told the agent that she and Vavages were at home at the time of his alleged offense, and Vavages undoubtedly intended to call Manuel to testify in his defense at trial.

Approximately a month and a half after this initial interview, the prosecutor learned that Manuel had herself been arrested earlier the same year in a marijuana transportation case, pled guilty, and agreed to cooperate fully with the government. Notwithstanding Manuel's potential alibi testimony, the prosecutor believed that similarities between Vavages' alleged drug activities and the drug offense for which Manuel had pled guilty would bolster the government's case against Vavages. Accordingly, the prosecutor considered calling Manuel as part of the government's case-in-chief.

Just before Vavages' trial was scheduled to begin, the prosecutor contacted Manuel's attorney about the possibility of Manuel testifying. The basic content of the conversation is not disputed. The prosecutor warned Manuel's attorney that he did not believe Vavages' alibi defense and that if Manuel testified falsely, the government could bring perjury charges against her and withdraw from the plea agreement in Manuel's own criminal case. The prosecutor had a total of three or four face-to-face and telephone exchanges with Manuel's attorney concerning the possibility of Manuel testifying. Neither the prosecutor nor Manuel's attorney suggests that any of the exchanges were unprofessional in tone, and Manuel's attorney admits that he did not feel personally intimidated by the conversations. Nonetheless, the undisputed consequence of the exchanges was that Manuel's attorney advised his client to assert her Fifth Amendment privilege against self-incrimination to avoid a perjury prosecution for what the prosecutor clearly believed would be false alibi testimony. The court recognized Manuel's blanket invocation of the Fifth Amendment, and she did not testify at trial.

### B.

Unnecessarily strong admonitions against perjury aimed at discouraging defense witnesses from testifying have been held to deprive a criminal defendant of his Sixth Amendment right to compulsory process for obtaining witnesses in his favor. The seminal case is *Webb v. Texas*, 409 U.S. 95, 93

S.Ct. 351, 34 L.Ed.2d 330 (1972) (per curiam). In *Webb,* the trial judge admonished a criminal defendant's only witness, who was himself serving a prison sentence, as follows:

> Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you. If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the likelihood [*sic*] is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking.

*Id.* at 95–96, 93 S.Ct. 351.

Noting that the trial judge "gratuitously singled out this one witness for a lengthy admonition on the dangers of perjury," that the judge "implied that he expected [the witness] to lie, and went on to assure him that if he lied, he would be prosecuted and probably convicted for perjury," and that the judge's comments were the apparent cause of the witness' refusal to testify, the Court held that the judge's comments had deprived the criminal defendant of due process under the Fourteenth Amendment. *Id.* at 97–98, 93 S.Ct. 351. "[I]n light of the great disparity between the posture of the presiding judge and that of a witness in these circumstances, the unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from

making a free and voluntary choice whether or not to testify." *Id.* at 98, 93 S.Ct. 351.

A number of post-*Webb* cases reveal that the trial judge is not the only person whose admonitions against perjury can deprive a criminal defendant of his right to compulsory process. In *United States v. Morrison,* 535 F.2d 223 (3d Cir.1976), for instance, the court held that a criminal defendant in a federal drug prosecution had been deprived of due process where the prosecutor told a potential witness that federal perjury charges were possible if she testified. *Id.* at 228. Far from simply warning the defense witness about the dangers of perjury, the prosecutor in that case subjected the witness to a "barrage of warnings" that her testimony might result in a perjury prosecution and could be used against her in the event she was prosecuted for federal drug charges. *Id.* at 225–26. Three warnings were delivered through defense counsel, while one was delivered directly to the witness during a personal interview. *Id.* Though noting that the prosecutor was "a figure somewhat lower in the hierarchy than the trial judge," the court held that he was a potent "symbol of the Government's power to prosecute offenders" and that his conduct violated *Webb. Id.* at 228.

As *Morrison* suggests, the conduct of prosecutors, like the conduct of judges, is unquestionably governed by *Webb. See also United States v. Blackwell,* 694 F.2d 1325, 1334 (D.C.Cir.1982); *Lord,* 711 F.2d at 892; *cf. Little,* 753 F.2d at 1438 (applying *Webb* to alleged interference by IRS). Equally well established, however, is that perjury warnings are not improper *per se* and that "the Sixth Amendment is not implicated every time a prosecutor or trial court offers advice regarding the penalties of perjury." *United States v. Davis,* 974 F.2d 182, 187 (D.C.Cir.1992). "Indeed, there are circumstances when warnings about the possibility and consequences of a perjury charge are warranted-even prudent." *Id.* A defendant's constitutional rights are implicated only where the prosecutor or trial judge employs coercive or intimidating language or tactics that substantially interfere with a defense witness' decision whether to testify. *See United States v. Harlin,* 539 F.2d 679, 681

(9th Cir.1976); *see also Davis,* 974 F.2d at 187 ("[A defendant's] rights are not trenched upon by mere information or advice about the possibility of a perjury prosecution, but by deliberate and badgering threats designed to quash significant testimony."); *Blackwell,* 694 F.2d at 1334 ("[W]arnings concerning the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witness into refusing to testify.").

■ The substantial interference inquiry is extremely fact specific. Among the factors courts consider in determining the coercive impact of perjury warnings are the manner in which the prosecutor or judge raises the issue, the language of the warnings, and the prosecutor's or judge's basis in the record for believing the witness might lie. *See, e.g., Davis,* 974 F.2d at 187–88; *United States v. Viera,* 839 F.2d 1113, 1115 (5th Cir.1988) (en banc). At least in the case of trial judges, we also scrutinize whether the warning indicates an expectation of perjury. *See Harlin,* 539 F.2d at 681. Where, under the totality of the circumstances, " 'the substance of what the prosecutor communicates to the witness is a threat over and above what the record indicates is necessary, and appropriate, the inference that the prosecutor sought to coerce a witness into silence is strong.' " *United States v. Pierce,* 62 F.3d 818, 832 (6th Cir.1995) (quoting *United States v. Jackson,* 935 F.2d 832, 847 (7th Cir.1991)).

### C.

■ In the present case, there is no question that the prosecutor was justified in contacting Manuel's counsel, cautioning him against his client's testifying falsely, and informing him of the possible consequences of perjurious testimony. Though there is no intimation that the prosecutor berated or badgered Manuel or her counsel with admonishments against perjury, three aspects of the prosecutor's conduct give us serious pause.

We are first concerned by the prosecutor's articulation of his belief that Manuel's alibi testimony would be false. The prosecutor combined a standard admonition against perjury-that Manuel could be prosecuted for perjury in the event she lied on the stand-with an unambiguous statement of his belief that Manuel *would be lying* if she testified in support of Vavages' alibi. The prosecutor contends that there was nothing wrong with the latter statement, and the statement indeed can be viewed simply as an articulation of the obvious. After all, it should be evident to a defense witness and her counsel that the government does not believe testimony that contradicts its case-in-chief, and the threat of a perjury prosecution does not seem especially greater simply because the prosecutor articulates this belief. We cannot disregard this prosecutor's conduct, however, where the additional statement served as no more than a thinly veiled attempt to coerce a witness off the stand. It does not require much of an interpretative gloss on the prosecutor's warning to conclude that unless Manuel changed her testimony or refused to testify at all, she *would* be prosecuted for perjury and suffer any attendant consequences. As the district court found, "[the prosecutor's] warnings were intimidating and were intended to stifle testimony which he believed would be perjurious in the defense of Mr. Vavages."

■ We do not mean to suggest that a prosecutor should *never* articulate his belief that a witness is lying. Rather, we disapprove of such conduct where the prosecutor lacks any substantial basis in the record for believing the witness is lying. That Manuel's testimony would have contradicted the testimony of the government's own witnesses does not form a sufficient basis for the prosecutor's warning. Rather, unusually strong admonitions against perjury are typically justified only where the prosecutor has a more substantial basis in the record for believing the witness might lie-for instance, a direct conflict between the witness' proposed testimony and her own prior testimony. *See United States v. Smith,* 997 F.2d 674, 680–81 (10th Cir.1993) ("[W]e are cognizant that [the court] was faced with a more real possibility of perjury than in some cases, in that the witness seemed to be preparing to give testimony in direct contradiction of her prior trial testimony, making a government charge of perjury apparently easy to establish.");

*Davis,* 974 F.2d at 188 (finding no coercion where defendant's testimony would conflict with his own statements in presentence report). Because Manuel's alibi testimony would have been entirely consistent with her own prior statements and would not have conflicted with any past testimony, the prosecutor lacked this substantial basis for believing Manuel would perjure herself.

Even more troubling than the threatened perjury prosecution was the prosecutor's threat to withdraw Manuel's plea agreement in her own unrelated criminal prosecution if she testified in support of Vavages' alibi. *See Blackwell,* 694 F.2d at 1333–34 (citing cases involving threats of prosecution for other crimes, reindictment on dropped charges, and revocation of probation). Because Manuel's plea agreement remains under seal, we cannot ascertain just how easily the government could have withdrawn the agreement had Manuel testified in Vavages' defense. If the government could have withdrawn from the plea agreement without successfully prosecuting Manuel for perjury, the prosecutor's additional threat was especially coercive. Even if withdrawal from the plea agreement would have required a perjury conviction, the threat rendered the prosecutor's warning considerably more intimidating.[1]

Our concerns are heightened by the prosecutor's emphasis during his closing argument on Vavages' failure to present anyone but his "cute[ ] . . . little kids" to support his alibi defense. The prosecutor emphasized that "[y]ou have in this case an alibi in which not one adult steps forward." He accused the defense of "every manipulation," calling the children's testimony "the shabbiest ploy in this case." He used an analogy in which the wife confronts a lying husband. He pointed out that Manuel was in the courtroom by noting that the testifying children "never looked at Dad," that they "had to look over at Mother, to make sure they're not getting into trouble." He concluded by arguing, "And you could ask, why didn't he bring other witnesses? . . . They could have brought other people, other than little cute children." Even if the prosecutor did not intend his comments to refer to Manuel's absence from the stand, the implication was plain. The inference can easily be drawn that the prosecutor intimidated a witness into refusing to testify, then capitalized on his misconduct during his closing argument by emphasizing that witness' failure to appear.

The strongest factor in the government's favor is that the prosecutor never directly admonished Manuel. The prosecutor instead admonished only Manuel's counsel, and admonishments that are threatening or intimidating to a lay witness might not be threatening or intimidating to the witness' counsel. *See Viera,* 839 F.2d at 1115. In other words, a defendant may not be prejudiced by a prosecutor's improper warnings where counsel for a witness strips the warnings of their coercive force. In the present case, however, there is no question that the prosecutor's warnings were a "but for" cause of Manuel's refusal to testify. Manuel's counsel clearly believed that the prosecutor would file perjury charges against Manuel and seek to withdraw her plea agreement if she testified in support of Vavages' alibi-whether truthfully or not-and the prosecutor's admonitions were "a very determining factor" in counsel's decision to advise Manuel not to testify. We are thus persuaded that the prosecutor substantially interfered with Manuel's decision whether to testify.

### D.

This interference was especially prejudicial in light of the district court's failure to scrutinize adequately Manuel's basis for invoking the Fifth Amendment privilege against self-incrimination. Although a criminal defendant's right to compulsory process to secure the attendance of a witness does not include the right to compel the witness to waive her Fifth Amendment privilege against self-incrimination, *see United States v.*

---

1. The prosecutor attempts to justify his conduct by emphasizing that the government was itself considering calling Manuel as a witness. Whether or not *Webb* applies to prosecution witnesses, *see Griffin v. Davies,* 929 F.2d 550, 554 (10th Cir.1991) (describing this as an open question), we decline to grant significantly more leeway to the prosecutor when the potential government witness has already been listed as a critical alibi witness for the defense.

*Moore,* 682 F.2d 853, 856 (9th Cir.1982), Manuel never established a good-faith belief that her testimony might incriminate her. Accordingly, the district court should not have approved her blanket invocation of the Fifth Amendment.

■■■■ The general standard for a valid assertion of the Fifth Amendment privilege is well established. In order to assert the privilege, witnesses "must show that their testimony would 'support a conviction under a federal criminal statute' or 'furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'" *United States v. Rendahl,* 746 F.2d 553, 555 (9th Cir.1984) (quoting *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)). "The standard for determining whether a claim of privilege is justified is 'whether the claimant is confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination.'" *United States v. Rubio–Topete,* 999 F.2d 1334, 1338 (9th Cir.1993) (quoting *United States v. Apfelbaum,* 445 U.S. 115, 128, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980)) (internal quotation marks omitted); *see also United States v. Troescher,* 99 F.3d 933, 934–35 (9th Cir.1996).

■■■ "[W]hen balancing the [S]ixth [A]mendment right of the accused and the [F]ifth [A]mendment right of the witness, 'the trial judge must make an appropriate inquiry into the basis of the privilege claimed by the witness, and may not permit the witness to refuse to testify'" where the witness has no good-faith basis for invoking the privilege or a narrower privilege would adequately protect the witness. *United States v. Thornton,* 733 F.2d 121, 125 (D.C.Cir.1984) (citation omitted); *see also Hoffman,* 341 U.S. at 486, 71 S.Ct. 814 ("The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself-his say-so does not of itself es-

tablish the hazard of incrimination. It is for the court to say whether his silence is justified."). The court's duty to scrutinize a witness' invocation of the Fifth Amendment is particularly weighty where, as here, the witness makes a blanket assertion of the privilege. *See United States v. Goodwin,* 625 F.2d 693, 701 (5th Cir.1980).

■■■ Manuel's only stated basis for her blanket invocation of the Fifth Amendment privilege was her belief that her alibi testimony, even if truthful, would subject her to a perjury prosecution. The district court accepted this basis for invoking the Fifth Amendment and ruled that Manuel "ha[d] every right to not testify."[2] The district court was mistaken. The government cites no case for the proposition that fear of a perjury prosecution as a result of *truthful* testimony is a sufficient basis for invoking the Fifth Amendment privilege. And even if Manuel's alibi testimony was false, the fear of a legitimate perjury prosecution still would not support her invocation of the privilege:

> A witness may not claim the privilege of the [F]ifth [A]mendment out of fear that he will be prosecuted for perjury for what he is about to say. The shield against self-incrimination in such a situation is to testify truthfully, not to refuse to testify on the basis that the witness may be prosecuted for a lie not yet told.

*United States v. Whittington,* 783 F.2d 1210, 1218 (5th Cir.1986) (footnote omitted). In short, Manuel did not articulate a valid basis for asserting the privilege against self-incrimination, and the district court erred in recognizing her blanket invocation of the Fifth Amendment.[3]

### E.

■■■ We cannot condone the prosecutor's thinly veiled threats to prosecute Manuel for perjury and to withdraw her plea agreement

---

2. The government speculates that Manuel invoked the Fifth Amendment because her truthful testimony would have revealed her substantive involvement in the offense with which Vavages was charged. However plausible this speculation, the district court recognized Manuel's blanket invocation of the Fifth Amendment privilege based solely on Manuel's fear that her alibi testimony would result in a perjury prosecution.

3. Fear of a perjury prosecution can typically form a valid basis for invoking the Fifth Amendment only where the risk of prosecution is for perjury in the witness' *past* testimony. *See Whittington,* 783 F.2d at 1218.

in the event she testified in support of Vavages' alibi. As we have recognized in related contexts, "[i]t is imperative that prosecutors and other officials maintain a posture of strict neutrality when advising witnesses of their duties and rights. Their role as public servants and as protectors of the integrity of the judicial process permits nothing less." *United States v. Rich*, 580 F.2d 929, 934 (9th Cir.1978). The prosecutor's conduct in this case did not live up to this standard.

We emphasize that the district court might have prevented the prosecutor's misconduct from prejudicing Vavages' defense by ensuring a proper basis for Manuel's invocation of the Fifth Amendment privilege or by requiring the government to grant her immunity for her testimony. *See United States v. Montoya*, 945 F.2d 1068, 1078 (9th Cir.1991) ("[I]f it can be shown that there has been misconduct by the prosecutor, in intentionally causing a witness to invoke his Fifth Amendment privilege, ... due process requires immunity to be granted."). The district court, however, waited until after Vavages had been convicted to examine the prosecutor's misconduct and took no curative action at any time prior to, during, or after the trial. In these circumstances, we hold that the court clearly erred in finding that Vavages' had not been prejudiced by the prosecutor's substantial interference with Manuel's decision whether to testify, and we reverse Vavages' conviction and remand for retrial.[4]

## II

Vavages also claims that the district court abused its discretion in admitting, under Rule 404(b) of the Federal Rules of Evidence, evidence of his prior arrest and conviction for possession with intent to distribute marijuana. Though we need not reach this issue, we nonetheless express concern whether such evidence should have been admitted.

The prior offense in question does bear substantial similarity to the offense with which Vavages is charged. The record indicates that in both instances, Vavages is alleged to have fled a vehicle containing a substantial amount of marijuana. Yet, even accepting the government's contention that such evidence is admissible to prove knowledge, the evidence was of minimal probative value in the present case where the only real issue was identity. Vavages' entire defense centered around his alibi, and he has contended all along that he simply is not the man who was seen fleeing the vehicle in question.

■ Vavages' prior conviction clearly was not admissible to show identity because the offense was not "'sufficiently distinctive to warrant an inference that the person who committed the [prior] offense also committed the offense at issue.'" *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir.1991) (quoting *United States v. Andrini*, 685 F.2d 1094, 1097 (9th Cir.1982)). The government contends that here, just as in the prior offense, Vavages fled from a vehicle containing large quantities of marijuana. This is hardly "peculiar, unique, or bizarre" conduct sufficient to "constitute a personal signature." *Id.; see also United States v. Quinn*, 18 F.3d 1461, 1466 (9th Cir.1994) ("Evidence that a person has committed one crime is not admissible to show the identity of the person committing another crime merely because the two offenses are similar. The offense must be *so similar* in their circumstances as to guarantee a reasonable likelihood that they were committed by the same person.") (emphasis added).

The potential for unfair prejudice from admission of the prior offense evidence was great. Given the similarity of the circumstances surrounding the offenses, the jury might improperly infer identity and conclude that it was indeed Vavages who fled the vehicle in question. But this is nothing more than the classic propensity inference that Rule 404(a) prohibits-because Vavages committed a similar marijuana offense before, he

---

4. We are unable to find harmless error. Manuel would have been the only adult non-codefendant witness to support Vavages' alibi defense, and her testimony, if believed, would have been completely exculpatory. Though Manuel's credibility is questionable, we are not convinced beyond a reasonable doubt that the jury would have reached the same verdict had Manuel testified.

**1194**

must have committed the present offense as well.[5]

We ultimately need not decide whether the district court abused its discretion in admitting the prior offense evidence. Further, we express no view on whether the prior offense evidence should be admitted on retrial. The district court is in the best position to assess the magnitude of the probative value and prejudicial effect of this evidence in light of all other evidence admitted. We emphasize, however, that the district court must undertake a thorough Rule 403 balancing before admitting the prior offense evidence, and, if the evidence is admitted, the court must carefully instruct the jury regarding the very limited purpose for which it may be considered.

**REVERSED AND REMANDED.**

---

5. Only a single limiting instruction in the court's jury charge lessened to any degree the likelihood of unfair prejudice.

