**Marcos Anthony ENRIQUEZ,
Petitioner—Appellant,**

v.

**Cheryl K. PLILER, Acting Deputy Director of the Parole and Community Services Division of the Department of Corrections, Respondent—Appellee.**

No. 03–56669.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2005.

Decided July 27, 2005.

of this circuit except as provided by Ninth Circuit Rule 36–3.

Mark McBride, Woodland Hills, CA, for Petitioner–Appellant.

Susan S. Kim, Esq., AGCA—Office of the California Attorney General, Los Angeles, CA, for Respondent-Appellee.

Before: FARRIS, D.W. NELSON, and TALLMAN, Circuit Judges.

## MEMORANDUM *

Habeas petitioner Marcos Anthony Enriquez complains that he was denied the Sixth Amendment right to effective assistance of counsel at his trial for three counts of attempted murder and assault with a firearm. This Court has jurisdiction pursuant to 28 U.S.C. § 2253. Under the Antiterrorism and Effective Death Penalty Act, habeas corpus relief on a claim adjudicated by a state court on the merits will be denied unless the decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *Strickland v. Washington,* 466 U.S. 668, 688, 691–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) sets forth the standard for a claim of ineffective assistance: a habeas petitioner must demonstrate that his representation (1) fell "below an objective standard of reasonableness," and (2) that counsel's mistakes were "prejudicial to the defense," that is, such mistakes as create a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Enriquez makes four claims. First, he argues that his attorney was ineffective because his lawyer did not contact the attorney for Macias, the admitted driver of the car during one of the charged shootings, to tell him that Macias would testify against Enriquez and that the recording of Macias's conversation with Detective Rivera would be introduced. Enriquez argues that this, in turn, prevented Macias from invoking his privilege against selfincrimination under the Fifth Amendment.

■ We reject his argument. Even if Enriquez could demonstrate that Macias could have invoked the privilege at all, he has failed to show that Macias could have done so in order to shield himself from prosecution for the testimony he gave at trial. *See United States v. Vavages,* 151 F.3d 1185, 1192 (9th Cir.1998) (the fear of a legitimate perjury prosecution does not support invocation of the privilege). Likewise, the argument that the recorded statement would have been excluded if Macias had invoked the privilege is not persuasive. Since Macias's testimony conflicted with his recorded statement, the recorded statement became admissible; if Macias's testimony had matched that of the recorded statement, there would have been no need to introduce the recorded statement. In either case, Macias would not have been able to invoke the privilege so as to avoid testifying for fear that he might be prosecuted for what he would say on the stand.

Further, even if we agreed that counsel erred, there was no prejudice as a matter of law. Three eyewitnesses identified Enriquez as the shooter. Even if counsel's performance was deficient, Enriquez has not demonstrated that he has been prejudiced. *See Strickland,* 466 U.S. at 691–94, 104 S.Ct. 2052.

Second, Enriquez claims that it was constitutional error for his lawyer not to challenge the empanelment of a deaf juror because that juror was unable to hear the vocal nuances in the tape recorded interview between Macias and Detective Rivera.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

The California Code of Civil Procedure states that "no person shall be deemed incompetent [to serve as a juror] solely because of the loss of . . . hearing in any degree. . . ." Cal.Civ.Proc.Code § 203(a)(6). At least two Circuits have held that the presence of a hearing-impaired juror, as a general matter, does not render a verdict constitutionally suspect. *See United States v. Saadeh,* 61 F.3d 510, 524–25 (7th Cir.1995); *United States v. Dempsey,* 830 F.2d 1084, 1088–89 (10th Cir.1987).

■ Enriquez contends that the ability to hear the testimony was particularly crucial because the jurors were required to make a determination about whether Macias's recorded or live testimony was more credible. Though the deaf juror was provided with the transcript of the recorded testimony, Enriquez claims that the juror could not detect any subtleties in the "climate" of the interview. But Enriquez points to no such nuances in the recorded dialogue that would have supported a finding that Macias's recorded testimony was false; rather, Enriquez argues that he was necessarily prejudiced because the deaf juror could not perceive such hypothetical subtleties. This claim fails. We are unwilling to speculate about vocal nuances in the recording or about interpretations of those nuances that might have favored Enriquez. *See Cooks v. Spalding,* 660 F.2d 738, 740 (9th Cir.1981).

Third, Enriquez argues that he was denied effective assistance when his attorney failed to object to the prosecutor's statement, in closing, that "[n]ot even [Enriquez's] fiancée would come up and testify for him. Maybe it's because she's not deceived."

■ Though it may have been improper for counsel not to object when the prosecutor made this statement, this is insufficient to found a claim of prejudice under *Strick-*

*land.* The jurors were properly instructed that no argument or statement made by the attorneys during the course of trial was evidence, and that the defendant was not required to call as a witness every person with knowledge of relevant facts. Moreover, the statement was at best peripheral to the evidence of the crimes with which Enriquez was charged.

■ Fourth, Enriquez complains that his attorney was ineffective by introducing the testimony of Enriquez's mother, sister, and best friend, that he was a "good guy" and not violent. This testimony "opened the door" for the government to introduce evidence that Enriquez had been convicted of three crimes: (1) driving a stolen white Toyota on September 10, 1997, (2) "allowing a gun in the car" on November 21, 1997, and (3) carrying a concealed weapon on December 5, 1997. The prosecutor also elicited an admission from Enriquez that he had "borrowed" the Toyota approximately six weeks after the shooting incidents, and counsel did not object to this testimony.

Even allowing that counsel's conduct may have fallen below an objectively reasonable standard on this issue, this evidence does not create a reasonable probability that, but for counsel's error, Enriquez would have been acquitted. None of the evidence that was admitted as a result was relevant to the two shooting incidents. Further, there was no reason for the jury to conclude that the Toyota was of necessity the same car that had been used to transport Enriquez to the shootings. The jury was also explicitly instructed that character evidence was only relevant to make credibility determinations. Lastly, Enriquez was identified as the shooter by three eyewitnesses, a fact that remains unaffected by the character evidence of-

fered by the government against him. The state court's conclusion that Enriquez was not prejudiced by this evidence and counsel's failure to object is not contrary to or an unreasonable application of *Strickland.*

We reject Enriquez's reliance on *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Enriquez was not completely denied counsel nor did counsel "entirely fail[ ] to subject the prosecution's case to meaningful adversarial testing[.]" *Id.* at 659, 104 S.Ct. 2039.

AFFIRMED.