**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICKY LEE EARP,
              *Petitioner-Appellant,*

v.

VINCENT CULLEN,* Warden of
California State Prison at San
Quentin,
              *Respondent-Appellee.*

No. 08-99005

D.C. No.
2:00-CV-06508-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
March 22, 2010—San Francisco, California

Filed October 19, 2010

Before: Jerome Farris, Dorothy W. Nelson, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

---

*Vincent Cullen is substituted for his predecessor, Robert L. Ayers, Jr.,
as Warden of California State Prison at San Quentin. Fed. R. App. P.
43(c)(2).

**COUNSEL**

Robert S. Gerstein (argued); Statia Peakheart and Dean R. Gits, Office of the Federal Public Defender; Sean Kennedy, Federal Public Defender, Los Angeles, California, for petitioner-appellant Ricky Lee Earp.

James W. Bilderback, II (argued), Supervising Attorney General; Keith H. Borjon, Supervising Deputy Attorney General; Pamela C. Hamanaka, Senior Assistant Attorney General; Dane R. Gillette, Chief Assistant Attorney General; Edmund G. Brown, Jr., Attorney General of California, Los Angeles, California, for respondent-appellee Vincent Cullen.

## OPINION

TALLMAN, Circuit Judge:

Petitioner-Appellant Ricky Lee Earp was sentenced to death after a jury convicted him of first-degree murder for the rape and murder of eighteen-month-old Amanda Doshier.[1] We affirmed in part but remanded in part Earp's first appeal of the denial of his petition for a writ of habeas corpus and instructed the district court to conduct an evidentiary hearing addressing two specific issues: (1) Earp's allegations of prosecutorial misconduct relating to the testimony of witness Michael Taylor; and (2) Earp's claim of ineffective assistance of counsel arising from a failure to sufficiently investigate mitigation evidence. *Earp v. Ornoski*, 431 F.3d 1158, 1164 (9th Cir. 2005). After conducting numerous hearings, the district court again denied the petition, but granted a certificate of appealability on both claims. We affirm the denial of Earp's claim of ineffective assistance of counsel and reverse and remand the denial of the prosecutorial misconduct claim.

## I

## A

In his petition for a writ of habeas corpus, Earp alleged that the deputy district attorney, Robert Foltz, engaged in misconduct by intimidating Michael Taylor, a witness who was going to testify in support of Earp's motion for a new trial. Taylor initially averred that he overheard fellow inmate Dennis Morgan admit, while the two were incarcerated in Los Angeles, to being at Earp's home the day Amanda was

---

[1]The facts and circumstances surrounding the crime are detailed in both the California Supreme Court opinion resulting from Earp's direct appeal, *People v. Earp*, 978 P.2d 15 (Cal. 1999), and our opinion in Earp's prior appeal, *Earp v. Ornoski*, 431 F.3d 1158, 1165-66 (9th Cir. 2005). We recite the facts again only as necessary to understand our opinion.

attacked. Taylor later recanted his original statement by claiming that it was a lie, and that Earp offered to pay Taylor if he would say that Morgan admitted to being present the day the crime occurred. However, Taylor again changed his story. This time, Taylor claimed that prosecutor Foltz and Edwin Milkey, the investigating sheriff's homicide detective, coerced him into recanting his original statement, and he affirmed his earlier statement about Morgan's admission.

The district court originally found Taylor incredible on the basis of his multiple declarations and denied Earp's claim of prosecutorial misconduct without conducting an evidentiary hearing. We reversed the district court after concluding that a question that turns on the "veracity of the witnesses . . . could not be adjudicated without an evidentiary hearing." *Earp*, 431 F.3d at 1170. In analyzing both whether Earp had a full and fair opportunity to develop his claim and whether he presented a colorable claim, we emphasized the importance of conducting an evidentiary hearing before making the requisite credibility determinations. *Id.* at 1169-72. We remanded to allow Earp "an opportunity to prove the facts supporting his claim." *Id.* at 1172.

On remand, Taylor, Foltz, and Milkey testified. Taylor testified that Foltz and three police officers met with him to discuss his original declaration and coerced him into recanting. Taylor claimed that Foltz threatened him and that Foltz directed Taylor on how to respond to certain questions. Finally, Taylor reaffirmed the statements he made in his original declaration. Foltz stated that he conducted an interview with Taylor after receiving Taylor's original statement claiming he overheard Dennis Morgan admit to being present at Earp's home. Foltz testified that Taylor voluntarily recanted his statement after learning that he would have to testify in court. Foltz maintained that neither he nor Milkey instructed Taylor on how to answer questions. They also did not threaten Taylor in any manner during any part of the interview. Milkey corroborated Foltz's testimony. He testified that Taylor

became nervous after learning that he would have to testify regarding his statement, and that Taylor was not coached on how to answer questions posed during the interview. Milkey denied all allegations that he or Foltz threatened or intimidated Taylor.

In an effort to bolster the credibility of Taylor, Earp sought to introduce the testimony of Cindy Doshier, the victim's mother, at the evidentiary hearing. According to Earp, Doshier was prepared to testify that she too was intimidated by Foltz after she testified in support of the defense at trial. The district court allowed Earp to call Doshier as a witness, but then appointed separate counsel to advise Doshier of her rights under the Fifth Amendment. Doshier subsequently invoked her Fifth Amendment right against self-incrimination, and the district court accepted her invocation on a blanket basis.

In its order denying Earp's petition, the district court expressly rejected Taylor's testimony as incredible, and found Foltz and Milkey to be credible witnesses independent of all other testimony received. Consequently, the district court denied Earp's allegation of prosecutorial misconduct. Earp now challenges the exclusion of Doshier's testimony, asserting that he was deprived of a full and fair opportunity to prove his claim due to the district court's improper acceptance of Doshier's invocation of her rights under the Fifth Amendment.

**B**

**[1]** We conduct de novo review of challenges to the invocation of the Fifth Amendment. *United States v. Antelope*, 395 F.3d 1128, 1133 (9th Cir. 2005). The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In order to properly claim the protections against self-incrimination, a witness must show that his testimony would

"support a conviction under a federal criminal statute . . . [or] would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). A witness justifiably claims the privilege if he is "confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." *United States v. Apfelbaum*, 445 U.S. 115, 128 (1980) (internal quotation marks and citations omitted).

**[2]** While the Fifth Amendment protects witnesses from incriminating themselves on the basis of past conduct, it "provides no protection for the commission of perjury." *Id.* at 127; *Glickstein v. United States*, 222 U.S. 139, 142 (1911) ("[I]t is also true that the immunity afforded by the constitutional guaranty relates to the past, and does not endow the person who testifies with a license to commit perjury."). There is "no doctrine of 'anticipatory perjury,' " and a "future intention to commit perjury" does not create a sufficient hazard of self-incrimination to implicate the Fifth Amendment privilege. *Apfelbaum*, 445 U.S. at 131.

**[3]** We applied this principle in *United States v. Vavages*, 151 F.3d 1185, 1192 (9th Cir. 1998), and held that the district court erred in recognizing a witness's invocation of the Fifth Amendment when the basis for the invocation was the witness's fear that the testimony about to be given "would subject her to a perjury prosecution." When a witness has not yet testified, "[t]he shield against self-incrimination . . . is to testify truthfully, not to refuse to testify on the basis that the witness may be prosecuted for a lie not yet told." *Id.* (quoting *United States v. Whittington*, 783 F.2d 1210, 1218 (5th Cir. 1986)). A blanket invocation of the Fifth Amendment in such circumstances is not acceptable because there is no "valid basis" for the assertion. *Id.*

**[4]** This case is indistinguishable from *Vavages*. The district court permitted Doshier to anticipatorily claim the Fifth Amendment privilege because it believed that she was going

to testify untruthfully. Supreme Court and Ninth Circuit precedent clearly preclude pre-emptive invocations of the privilege. The district court erred by accepting Doshier's assertion of the Fifth Amendment.

**[5]** Nonetheless, the State contends that Doshier properly asserted her Fifth Amendment privilege because she faced a substantial and real hazard of incrimination. According to the State, the testimony Doshier planned to give at the evidentiary hearing could have established that a declaration she completed in 1997 was perjurious. "Fear of a perjury prosecution can typically form a valid basis for invoking the Fifth Amendment . . . where the risk of prosecution is for perjury in the witness' *past* testimony." *Vavages*, 151 F.3d at 1192 n.3. This argument is not persuasive, however, because the district court did not rely on Doshier's past testimony as the basis for her Fifth Amendment privilege. It is the district court's duty to determine the basis for a witness's assertion of the Fifth Amendment privilege. *Hoffman*, 341 U.S. at 486 ("It is for the court to say whether [a witness's] silence is justified, and to require him to answer if 'it clearly appears to the court that he is mistaken.' " (citations omitted)). The district court allowed Doshier to invoke the Fifth Amendment because her *proposed* testimony would expose her to the possibility of prosecution; it believed she would commit perjury if allowed to testify. The district court did not focus on Doshier's potential liability for statements made in her earlier declaration. Because a witness cannot validly assert her Fifth Amendment rights upon a fear that she is about to commit perjury, there was no viable basis for the district court's acceptance of Doshier's invocation.

Moreover, there was no substantial risk that Doshier would be prosecuted for perjury on the basis of her 1997 declaration due to the federal and state statutes of limitation. Under federal law, a person may not be prosecuted for perjury more than five years after the offense. 18 U.S.C. § 3282(a). California law imposes a limitation of three years. Cal. Penal Code

§§ 126, 801, 803. Doshier's trial testimony occurred sixteen years before the evidentiary hearing, and she completed her declaration ten years prior to the hearing. The relevant statutes of limitation had long since expired.

**[6]** Our initial remand of this case was for the purpose of allowing Earp an opportunity to develop facts in support of his claim of prosecutorial misconduct. The district court deprived Earp of a full and fair hearing because it erroneously accepted Doshier's invocation of the Fifth Amendment. Thus, we remand this claim for another evidentiary hearing at which Earp should be afforded a full and fair opportunity to develop the facts supporting his allegations. At the evidentiary hearing, the district court is free to control the admission or exclusion of evidence by exercising its discretion under the Federal Rules of Evidence, specifically Rules 404(b) and 608. Our decision to remand Earp's prosecutorial misconduct claim is based solely on the district court's erroneous acceptance of Doshier's invocation of the Fifth Amendment, and this opinion should not be interpreted as a comment on the merits of his claim.

## C

**[7]** In his opening brief, Earp requested that, upon remand, we reassign the case to a different judge. In the absence of personal bias, we assign a case to a new judge on remand only in "unusual circumstances." *United States v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777, 780 (9th Cir. 1986). To make a determination that unusual circumstances exist, we consider whether: (1) "the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected"; (2) "reassignment is advisable to preserve the appearance of justice"; and (3) "reassignment would entail waste and duplication out of proportion to any gain in pre-

serving the appearance of fairness." *Id.* (quoting *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1979)).

**[8]** We regrettably conclude that the circumstances of this case warrant reassignment. In its order, the district judge made explicit credibility findings—it found Taylor incredible and Foltz and Milkey credible. On remand, we cannot reasonably expect the district judge to set aside these credibility findings and reassess the viability of Earp's claim of prosecutorial misconduct in light of Doshier's testimony. Additionally, during the pendency of the original proceedings on remand, we had to intervene and enter an emergency stay in response to the district judge's refusal to continue the evidentiary hearing in order to allow Earp and the California Department of Corrections time to locate and transport inmate Taylor to Los Angeles to testify. At the next hearing, the district judge was very critical of the request for a stay, notwithstanding the importance our remand order placed on assessing Taylor's accusation. Under these circumstances, reassignment is necessary to uphold the appearance of justice.

A finding of only one of the first two factors identified in *Arnett* supports reassignment on remand. *Sears*, 785 F.2d at 780. Not only do the first two factors weigh in favor of reassignment, but doing so would not result in an undue waste of judicial resources. To this point, the district judge has facilitated the whittling of Earp's federal habeas claims from nineteen to two. It will not take a different district judge much time to become acquainted with the facts underlying Earp's claim of prosecutorial misconduct—the only issue that will need to be addressed on remand. We express no opinion on the ultimate credibility determination. The district court is free to conduct such proceedings and rule however the credible evidence warrants.

**II**

**A**

**[9]** In his petition for a writ of habeas corpus, Earp also asserted a claim of ineffective assistance of counsel. Specifically, he alleged that trial counsel neglected to conduct sufficient investigation into potential mitigating evidence. Had sufficient investigation occurred, Earp argued that trial counsel would have uncovered school records indicating emotional and psychological problems, additional information about Earp's familial background—including a history of substance abuse and mental health problems—and significant mental health evaluations evincing organic brain damage. *Earp*, 431 F.3d at 1172.

**[10]** At an evidentiary hearing held by the district court, Earp presented numerous witnesses in support of his claim of ineffective assistance of counsel. Adrienne Dell, Earp's counsel for the penalty phase of trial and later his wife, testified on direct examination that she did minimal investigation and did not personally interview the witnesses presented at the penalty phase. She claimed that she did not inquire into Earp's history of drug abuse, nor did she investigate his mental health or request a neuropsychological exam. However, on cross-examination, she equivocated when confronted with her own billing records indicating several conferences with her co-counsel, investigator, and others regarding penalty phase matters, and she admitted that Earp had been evaluated by two psychologists. In fact, she acknowledged receiving one psychologist's conclusion that Earp "fit the profile of being a child molester." She also acknowledged that "several" investigators were retained to assist with both the guilt phase and the penalty phase of Earp's trial. Dell identified notes she received prior to Earp's trial stating that there were no indicators of organic brain damage, and admitted that she probably would have presented evidence of organic brain damage if the evidence had indicated Earp had any such damage.

Earp also elicited the testimony of a social worker for the California Youth Authority ("CYA") who had compiled a report on Earp containing psychiatric and psychological evaluations, medical and dental reports, a social history, and evaluations of Earp's interactions within his CYA living unit. He presented three childhood acquaintances, who all testified about Earp's drug and alcohol abuse during his teenage years. Earp's brother and sister testified about Earp's childhood and his relationships with his father, mother, and stepfather.

[11] During the evidentiary hearing, Earp sought to introduce the testimony of Dr. Inez Monguio, a neuropsychologist who evaluated Earp in 2002 to determine whether he had organic brain damage. She testified that had she examined Earp in 1991, she would have reached the same conclusions as she did in 2002, and that the tests she utilized during her evaluation were either available in 1991 or had comparable counterparts at that time. On cross-examination, Dr. Monguio stated that she did not confer with any of the mental health professionals who had evaluated Earp at the time of his trial. She also admitted that she could not reliably opine on Earp's mental state at the time of the crime. After that admission, the State moved to strike Dr. Monguio's testimony. The district court granted the motion to strike, concluding that Dr. Monguio's testimony was not helpful because, in 2002, she could not determine whether Earp had organic brain damage at the time of his trial in 1991.

[12] Earp's final witness at the evidentiary hearing was Ezekiel Perlo, an experienced capital case attorney licensed to practice in California. The State objected to Perlo's testimony on the basis that the purpose of the testimony was to opine regarding the effectiveness of Earp's trial counsel—a legal conclusion to be made by the district court. The district court allowed Perlo to testify regarding what trial counsel should have done, but excluded his ultimate legal opinion pertaining to the adequacy of Earp's trial counsel's performance. Accordingly, Perlo testified about the applicable standards of

attorney competence in 1991. Specifically, he stated that trial counsel should develop evidence if there is an indication of drug abuse or mental health problems, but he also acknowledged that there is an end to the duty to investigate.

In response, the State presented the testimony of investigator Sheryl Duvall, a member of Earp's defense team who had been responsible for discovering mitigation evidence, and two attorneys assigned to Earp's case before Dell was appointed. The defense investigator reported that the extensive pre-trial inquiry she conducted produced psychological and psychiatric reports, probation records, and prison records. Duvall also met with Earp, his mother, his sister, his brother, his stepfather, his aunt, and his cousin. Duvall spoke with Earp's former teachers, former partners, and employees at the CYA.

Louis Bernstein, lead defense counsel during the guilt phase of Earp's trial, testified that Earp's lack of candor impeded attempts to uncover additional mitigation evidence. He stated that he and Dell worked together and offered advice and assistance to one another. Marcia Morrissey, the attorney originally assigned to the penalty phase of Earp's trial, verified that she obtained pre-trial psychological reports from Earp's childhood, and she identified records of meetings she held with two mental health experts regarding potential mitigating evidence. Morrissey testified that she transferred everything to Dell at the time she ceased working on the case, and recalled telling Dell that more investigation needed to be done to obtain a "coherent picture" of Earp.

After receiving all of this evidence, the district court found that Earp did not satisfy his burden of proof "as to either deficient performance or resulting prejudice." It discredited the testimony of Adrienne Dell because her testimony was "vague, inconsistent, and subject to lapses of memory in significant areas." Additionally, Dell's testimony contradicted her own contemporaneous records and notes and was inconsistent with other testimony. The district court also rejected

the testimony of the social worker, Earp's childhood friends, and his family as being cumulative, unpersuasive, and biased. The court discussed Dr. Monguio's testimony, and reaffirmed its decision to strike it. Finally, the district court stated that Perlo's testimony was not "particularly illuminative or useful."

**[13]** Earp now challenges the district court's limitation of Perlo's testimony and its decision to strike Dr. Monguio's testimony. Similar to his argument regarding the prosecutorial misconduct allegation, Earp claims that the district court's evidentiary rulings deprived him of a full and fair opportunity to present his claim of ineffective assistance of counsel. Earp also contends that the district court erred in denying his ineffective assistance of counsel claim on the merits.

**B**

We review de novo a district court's decision to deny or grant habeas relief. *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004). The Anti-Terrorism and Effective Death Penalty Act governs our review of Earp's petition because it was filed after April 24, 1996. *Woodford v. Garceau*, 538 U.S. 202, 210 (2003). Because there is no reasoned state court decision addressing the merits of Earp's ineffective assistance of counsel claim, we conduct an independent review of the record and determine whether the state court's decision was objectively unreasonable. *Richter v. Hickman*, 578 F.3d 944, 951 (9th Cir. 2009) (en banc).

Ineffective assistance of counsel claims are governed by the two-prong analysis pronounced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a claimant must "show that counsel's performance was deficient." *Id.* at 687. Counsel renders deficient performance when representation falls "below an objective standard of reasonableness." *Id.* at 688. We conduct a "highly deferential" review of counsel's conduct because "it is all too easy for a court, examining counsel's defense after

it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

If a claimant establishes that counsel's performance was deficient, he must then show that the deficiencies were prejudicial—"that they actually had an adverse effect on the defense." *Id.* at 692-93. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Rhoades v. Henry*, 611 F.3d 1133, 1141 (9th Cir. 2010).

Earp premises his claim of ineffective assistance of counsel on two deficiencies: (1) inadequate investigation of organic brain damage; and (2) inadequate investigation of Earp's background. The district court denied Earp's claim, finding that he failed to show that either allegation constituted deficient performance or that either alleged deficiency caused prejudice. Specifically, the district court found that "counsel made adequate investigation into [Earp's] background and family history and that counsel did not curtail required investigation into possible emotional, psychological or neurological problems stemming from early childhood, any possible organic brain damage, or the mitigating possibility of youthful drug abuse." Furthermore, it concluded that there was nothing in the record that indicated that Earp was "prejudiced by any purported deficiency of counsel." We need not address whether Earp was prejudiced by trial counsel's performance because we conclude that trial counsel's performance was not deficient. *See Hein v. Sullivan*, 601 F.3d 897, 918 (9th Cir. 2010) ("[W]e may dispose of [the ineffective assistance of counsel] claim if [the claimant] fails to satisfy either prong of the two-part test.").

**1**

Before reaching the merits of Earp's claim of ineffective assistance of counsel, we address his challenge to the district court's decision to limit the testimony of Perlo. We review a district court's decision to admit or exclude expert testimony for an abuse of discretion. *United States v. W.R. Grace*, 504 F.3d 745, 759 (9th Cir. 2007). At the evidentiary hearing, the district court precluded Perlo from opining on Earp's trial counsel's performance and repeatedly admonished Earp that such questions were improper. The district court did, however, permit Earp to question Perlo regarding what competent trial counsel in a death penalty case should have done in 1991.

Expert testimony is not necessary to determine claims of ineffective assistance of counsel. *Hovey v. Ayers*, 458 F.3d 892, 910 (9th Cir. 2006). When determining whether to admit expert testimony, the district court must consider the probative value of the testimony—a consideration that hinges on the court's ability to "assess the issues." *Id.* at 911. Because a district court is "qualified to understand the legal analysis required by *Strickland*," it does not abuse its discretion in excluding expert testimony relating to that analysis. *Id.*

**[14]** The aspects of Perlo's testimony that were excluded by the district court in this case impacted only the determination of whether Earp's trial counsel satisfied the appropriate standard of care. It was not an abuse of discretion for the district court to prevent Perlo from testifying regarding this ultimate legal conclusion because it was a determination the district court was qualified to make.

**2**

Earp alleges that he received ineffective assistance of counsel at the penalty phase of his trial due to his counsel's failure to investigate whether he suffered from organic brain damage. In support of his claim, Earp elicited the testimony of his pen-

alty phase counsel, Dell. She stated that she neither investigated Earp's mental state nor requested a neuropsychological evaluation. However, she did acknowledge that two psychologists and a psychiatrist evaluated Earp. Dell also confirmed that she reviewed notes from Marcia Morrissey, the attorney originally assigned to the penalty phase of Earp's trial, which stated that there were no indications of organic brain damage. Finally, Dell admitted that she wrote a letter during preparation for Earp's trial explicitly stating that the medical records contained no information suggesting that Earp had organic brain damage.

Earp also relied on the testimony of neuropsychologist Dr. Inez Monguio.[2] In her report and deposition testimony, Dr. Monguio concluded that Earp had deficits in processing speed and working memory that were consistent with organic brain damage. The testing also revealed that Earp experienced difficulty with verbal and visual functions, which indicated problems in the anterior areas of both the left and right hemispheres of the brain. Dr. Monguio summarized her findings as "consistent with organic damaged [sic] by traumatic brain injury."

**[15]** Notwithstanding Dr. Monguio's conclusions that Earp had organic brain damage that was diagnosable in 1991 and Dell's statements that she did not investigate the possibility of organic brain damage, we conclude that Earp has not established that his trial counsel was deficient for failing to investigate this potential mitigating evidence. Earp contends that because Dr. Monguio's 2002 report clearly establishes that he had organic brain damage at the time of his trial in 1991, his

---

[2]Earp argues that the district court abused its discretion when it struck Dr. Monguio's testimony. For purposes of resolving Earp's appeal, we assume that Dr. Monguio was qualified to testify as an expert and that the district court improperly excluded her testimony. Therefore, we accept the conclusions outlined in her comprehensive report and deposition testimony.

trial counsel was ineffective for failing to discover and present this mitigating evidence. The record belies Earp's allegations of insufficient investigation of organic brain damage.

[16] When there is no "objective indication" that a defendant has a mental illness or brain damage, we cannot label counsel "ineffective for failing to pursue this avenue of mitigation." *Gonzales v. Knowles*, 515 F.3d 1006, 1015 (9th Cir. 2008). Dell's testimony, in combination with the records created at the time of the penalty phase of Earp's trial, establish that Earp's defense counsel was pursuing the possibility of organic brain damage—there was just no evidence to support that theory. Rather, one psychologist concluded that Earp was a sociopath and that he had a higher probability than the average person to be a child molester. We cannot fault trial counsel for failing to further investigate potential mitigating evidence of organic brain damage when the thorough defense investigation, that explicitly pursued the possibility of organic brain damage, uncovered no helpful information.

[17] Furthermore, Dr. Monguio's contradictory diagnosis of organic brain damage, received eleven years after Earp's trial, is insufficient to overcome the contemporaneous documentation that indicated that Earp did not have organic brain damage. *See Boyde v. Brown*, 404 F.3d 1159, 1166-67 (9th Cir. 2005) (rejecting a retrospective competency determination in favor of contemporaneous evidence that showed the defendant was competent to stand trial); *id.* at 1167 (holding that defendant could not establish that his trial counsel was ineffective for failing to request a competency hearing when all of the contemporaneous evidence supported the conclusion that the defendant was competent). The fact that Earp can now present a neuropsychologist who is willing to opine that he had organic brain damage at the time of his trial does not impact the ultimate determination of whether Earp's trial counsel insufficiently investigated that possibility.

The pertinent question is whether Earp's counsel pursued the possibility that Earp had organic brain damage—it indis-

putably did, but to no avail. Even if the mental health professionals who evaluated Earp at the time of his trial incorrectly concluded that Earp did not have organic brain damage, Earp's claim fails. An expert's failure to diagnose a mental condition does not constitute ineffective assistance of *counsel*, and Earp has no constitutional guarantee of effective assistance of experts.

**[18]** We agree with the district court's finding that "the possibility of brain damage was carefully considered before being excluded." We reject Earp's claim of ineffective assistance of counsel for failing to investigate organic brain damage due to his inability to show that his trial counsel rendered deficient performance.

**3**

Earp next contends that trial counsel violated professional norms by failing to adequately investigate Earp's familial background, childhood, and social history. Specifically, Earp argues that trial counsel should have contacted three childhood friends and a CYA social worker. At the evidentiary hearing, Earp's childhood friends testified that Earp began using drugs in seventh or eighth grade. Earp asserts that the evidence of his extensive drug use as a teenager would have "humanized" him and reinforced any references to the possibility of organic brain damage. He claims further that had trial counsel contacted the CYA social worker, her report would have led to additional mitigation evidence and could have revealed another strategy for conducting the penalty phase of Earp's trial.

**[19]** The fact that Earp now presents additional witnesses who were not contacted prior to the penalty phase of Earp's trial does not compel a finding that trial counsel rendered ineffective assistance. The Supreme Court recently reaffirmed the proposition that we cannot fault trial counsel for failing to find more mitigating evidence if trial counsel reasonably

believed that further investigation would produce only cumulative evidence. *Bobby v. Van Hook*, 130 S. Ct. 13, 19 (2009). Indeed, requiring additional research in such instances could have potentially negative implications because it would distract trial counsel from performing more important responsibilities. *See id.*

**[20]** Although Earp presented four witnesses not contacted before the penalty phase of his trial, we cannot agree that trial counsel inadequately investigated his familial background, childhood, and social history. The defense investigator hired by Earp's trial counsel conducted extensive research and field work. She interviewed Earp numerous times, met with his childhood friend, David Callenchini, interviewed his immediate and extended family, and spoke with his former teachers and juvenile probation officers. Additionally, she obtained records from Earp's prior psychiatric hospitalization, previous psychological examinations, medical examinations, and a psychological evaluation conducted after Earp's father died. She even pursued Earp's father's mental health records. The investigator also acquired Earp's school and juvenile probation records. It is evident that Earp's defense team was vigilant in its investigation of his past notwithstanding the difficulties caused by Earp's lack of honesty with his lawyers.

**[21]** "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Trial counsel's failure to contact the four witnesses Earp now presents does not violate objective standards. "This is not a case in which the defendant's attorneys failed to act while potentially powerful mitigating evidence stared them in the face, or would have been apparent from documents any reasonable attorney would have obtained." *Bobby*, 130 S. Ct. at 19 (internal citations omitted). In fact, there is no evidence in the record that trial counsel knew, or should have known, of Earp's relationship with these four witnesses. Consistent with Perlo's testimony regarding what competent capital counsel should

investigate, Earp's trial counsel obtained school records, prison records, CYA records, and doctors' records, in addition to speaking with Earp's family and his former teachers. Earp's penalty phase counsel conducted sufficient investigation into Earp's social history in an effort to uncover potential mitigating evidence.

## III

The district court erred when it allowed Cindy Doshier to invoke her Fifth Amendment right against self-incrimination. This error deprived Earp of a full and fair opportunity to present his claim of prosecutorial misconduct. Therefore, we REVERSE the district court's denial of this claim, REMAND for a full and fair evidentiary hearing on only the prosecutorial misconduct claim, and instruct that this case be reassigned to another district judge on remand. We further hold that Earp has not shown in any respect that his trial counsel's performance was deficient. We thus AFFIRM the district court's denial of Earp's claim of ineffective assistance of counsel.

**AFFIRMED in part; REVERSED and REMANDED in part. Each party shall bear its own costs.**