**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RICKY LEE EARP,
　　　　　　　*Petitioner-Appellant*,

　　　　v.

RON DAVIS, Warden of California
State Prison at San Quentin,
　　　　　　　*Respondent-Appellee.*

No. 15-56989

D.C. No.
2:00-cv-06508-
MMM

OPINION

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted January 12, 2018
Seattle, Washington

Filed February 6, 2018

Before: Jerome Farris, Richard C. Tallman,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Tallman

# SUMMARY[*]

## Habeas Corpus

The panel affirmed the district court's order on remand denying on the merits California state prisoner Ricky Earp's remaining habeas corpus claims that the state court improperly denied his motion for a new trial based on prosecutorial misconduct.

Earp contended that he should have been allowed to conduct further discovery to explore a possible relationship between those responsible for the California Department of Justice's alleged spoliation of DNA evidence and alleged witness intimidation; and that the district court improperly weighed and did not credit the defense witnesses' testimony, notwithstanding an adverse inference given to Earp for the limited purpose of assessing the witnesses' credibility at the evidentiary hearing.

The panel held that the district court correctly found that any link between spoliated evidence established by the adverse inference (even if true) and the alleged witness intimidation was too attenuated, and did not abuse its discretion in declining to authorize further discovery in light of that finding. The panel held that the district court did not clearly err in weighing the credibility of the evidence in light of the evidence adduced at the hearing.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Robert S. Gerstein (argued), Santa Monica, California; Statia Peakheart, Los Angeles, California; Emily J.M. Groendyke, Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellant.

James William Bilderback II (argued), Supervising Deputy Attorney General; A. Scott Hayward, Deputy Attorney General; Lance E. Winters, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Los Angeles, California; for Respondent-Appellee.

**OPINION**

TALLMAN, Circuit Judge:

California state prisoner Ricky Earp appeals the district court's order denying his 28 U.S.C. § 2254 habeas corpus petition. In his petition, Earp claims that the California state court improperly denied his motion for a new trial based on the State's prosecutorial misconduct. This case comes to us for the third time on appeal.

In 1992, Earp was sentenced to death after a Los Angeles County jury convicted him for the 1988 first-degree murder and rape of an 18-month-old girl. Earp filed a motion for a new trial, arguing that a newly discovered witness, Michael Taylor, would impeach Dennis Morgan's trial testimony that Morgan had never been to the scene on the day of the crime. However, the government presented evidence that Taylor

recanted this impeaching statement. Consequently, the trial court denied Earp's motion for a new trial without conducting an evidentiary hearing. The California Supreme Court affirmed on direct appeal. *People v. Earp*, 978 P.2d 15, 56 (Cal. 1999). Following an unsuccessful state habeas petition, Earp then filed a federal habeas petition. *Earp v. Ornoski*, 431 F.3d 1158, 1169 (9th Cir. 2005) ("*Earp I*"). The district court denied the petition and adopted the state court's factual findings, holding that "Taylor's declarations were 'inherently untrustworthy and not worthy of belief.'" *Id.*

On subsequent appeal, our panel determined that because the state court had made its credibility determination without an evidentiary hearing, the state court had made its decision based on an unreasonable determination of the facts. *Id.* We similarly held that the district court erred when it "reached its credibility determination without taking the opportunity to listen to Taylor, test his story, and gauge his demeanor." *Id.* Determining that Earp may have presented a colorable due process claim, we then remanded the case to the district court for a hearing to determine the credibility of the parties' witnesses concerning the alleged prosecutorial misconduct.[1] *Id.* at 1172.

In 2011, while Earp's federal habeas petition was on remand, Earp moved in state court for DNA testing of napkin and pillow swatches recovered at the crime scene. Earp hoped the testing would produce evidence that Morgan had visited the scene, as Taylor would testify he heard Morgan

---

[1] We noted that if the prosecutorial misconduct caused Taylor's recantation, Earp would still need to establish prejudice by showing that Taylor's testimony entitled him to a new trial under California law. *Id.* at 1171 n.10.

admit. The state court granted the motion, but the laboratory could not perform the test because it discovered that some of the evidence was missing. On habeas review, Earp then sought further discovery from the federal district court to explore a possible relationship between the disappearance of the evidence and those involved in the alleged prosecutorial misconduct. Instead, the district court assumed without deciding that the State engaged in spoliation, and gave Earp the benefit of an adverse inference for the limited purpose of assessing the credibility of the witnesses at the evidentiary hearing.

Following a thorough evidentiary hearing, the district court held that Earp failed to prove his prosecutorial misconduct claim by a preponderance of the evidence, and therefore, he was not denied his due process rights. The district court also denied Earp's discovery motion. Accordingly, the court denied the only remaining claim from Earp's 2001 federal habeas petition. Earp makes two contentions on appeal: (1) he should have been allowed to conduct further discovery to explore a possible relationship between those responsible for the alleged spoliation and the alleged witness intimidators; and (2) the district court improperly weighed and did not credit the defense witnesses' testimony notwithstanding the adverse inference. We affirm the district court's ruling and hold that it did not abuse its discretion in declining to authorize further discovery; nor did it clearly err in weighing the credibility of the witnesses. As Earp had no remaining viable claims, the district court's denial of his petition for a writ of habeas corpus was proper.

I

The facts and circumstances surrounding Earp's crime are provided in detail in both the California Supreme Court

opinion resulting from Earp's direct appeal, *Earp*, 978 P.2d at 27–31, and our prior opinion in *Earp I*, 431 F.3d at 1165–66. Here, we provide only a brief overview of the basic facts and procedural history, with a more penetrating look at the pertinent record as it relates to the most recent proceedings.

On August 22, 1988, Cindy Doshier left her 18-month-old daughter, Amanda Doshier, with Ricky Earp for a few days at his girlfriend's home in Palmdale, California. *Earp*, 978 P.2d at 27. Earp claimed that Dennis Morgan appeared at the home on August 25 in search of heroin. Earp knew Morgan from their previous time together in state prison. After giving Morgan a spoon (ostensibly to cook the drug) and telling him to leave, Earp claimed he left Amanda inside and went outside to clean paint brushes for approximately 30 minutes. At trial, Earp testified that when he returned, "[h]e discovered Amanda lying motionless at the bottom of the stairs, and made a number of attempts to revive her, including performing CPR, before calling emergency services. Earp further testified that Morgan left as Earp was calling for help." *Earp I*, 431 F.3d at 1168. After a fireman arrived to transport Amanda to the emergency room, Earp fled and was later arrested in Northern California. Morgan swore that he was never at the house on the day of the attack, and that he was not responsible for Amanda's death. *Id.* at 1165. Morgan also said that Earp asked him to testify that another man named "Joe" was there that day. *Id.* Ultimately, the jury credited the State's evidence, and Earp was sentenced to death after the jury convicted him of Amanda's rape and murder. *Earp*, 978 P.2d at 27.

After Earp's trial, but prior to sentencing, Earp filed a motion for a new trial alleging (among other claims) that a jailhouse informant, Michael Taylor, had overheard Morgan admit that he was at the house that day. The prosecution then

presented evidence that Taylor later recanted this claim after being visited by the assistant district attorney and the lead sheriff's detective at the Los Angeles County Jail. Stating that "it would appear that even if this was a declaration by [Taylor] himself, it is inherently untrustworthy, . . . and not worthy of belief," the trial court denied Earp's motion. The California Supreme Court subsequently affirmed Earp's conviction, *id.* at 66, and summarily rejected his state habeas corpus petition.

In 2001, Earp filed a petition for a writ of habeas corpus in the District Court for the Central District of California, alleging 19 separate claims of error. The district court denied Earp's petition as to all claims. As to the witness intimidation claim, the court erroneously relied on the state court's credibility findings concerning Taylor's testimony. On appeal, we affirmed denial of 17 claims but we reversed and remanded for an evidentiary hearing on Earp's prosecutorial misconduct and ineffective assistance of counsel ("IAC") claims. *Earp I*, 431 F.3d at 1165.

On remand in 2007, the district court conducted an evidentiary hearing to explore the testimony of Taylor, the trial prosecutor, Robert Foltz, and the chief investigator for Los Angeles County, Detective Sergeant Edwin Milkey. *Earp v. Cullen*, 623 F.3d 1065, 1069 (9th Cir. 2010) ("*Earp II*"). At that hearing, Taylor claimed Foltz and Milkey intimidated him into recanting his statement that Morgan had admitted to being at Earp's home on the day of the attack. *Id.* Additionally, Earp sought to introduce the testimony of Cindy Doshier, Amanda's mother, who claimed to have been intimidated by Foltz as well. *Id.* Instead, at the hearing Doshier invoked her Fifth Amendment right against self-incrimination on the basis that she might be subject to perjury charges. *Id.* The district judge previously assigned

to this litigation credited the State's witnesses, discredited Earp's, and again dismissed his petition. *Id.* at 1070. On appeal, we again reversed and remanded, holding that the district court erred in permitting Doshier to avoid testifying by invoking the Fifth Amendment as the statute of limitations "had long since expired." *Id.* at 1071. We also held that the district court properly dismissed his IAC claim. *Id.* at 1078.

After we issued *Earp II*, Earp then moved in California superior court for DNA testing of napkin and pillow swatches recovered at the scene of the crime. The superior court granted Earp's motion under California Penal Code § 1405, and the sealed evidence was transported from the Los Angeles County Sheriff's Department crime laboratory to a private laboratory in 2012. Upon its arrival, the private laboratory discovered that some of the evidence was missing from its sealed envelope. The supervising criminalist at the Sheriff's Department crime laboratory, Kenneth Sewell, conducted an investigation into the disappearance, and determined that the evidence had previously been transferred for a single day in 2002 to the California Department of Justice's ("CDOJ") crime laboratory at the request of Sheriff's Department homicide detective Gerry Biehn. Sewell noted that it was the only occasion in his 25 years of service when the Sheriff's Department had released evidence to the CDOJ.

In 2014, now assigned to a different district judge (Hon. Margaret Morrow), the district court heard testimony from Foltz, Milkey, Taylor, and Doshier. Taylor testified that he had overheard Morgan talk about being at Earp's house when Amanda was assaulted, and that Foltz and Milkey had previously intimidated him into recanting that testimony. Doshier testified that Foltz had told her Earp's blood and

semen were found on Amanda's body, that she had testified to that effect at trial, but that she was then intimidated into immediately recanting that testimony when recalled to the stand at trial after Foltz threatened to have her other children taken away. Foltz and Milkey testified that when they interviewed Taylor after he had given his first declaration, without any threats or intimidation, he had admitted in a recorded statement that his claim concerning Morgan was not true and that he made it up at Earp's insistence. Foltz further testified that he had not told Doshier that Earp's blood and semen were found on autopsy, and that he had not intimidated her. Ultimately, the court credited Foltz and Milkey's testimony, discredited Taylor's testimony, and found Doshier's testimony "not particularly credible."

In making its findings, the district court noted that Taylor had a prior conviction for a crime involving dishonesty (providing a false identification card to police), he had admitted to previously using at least 12 different aliases, there were major inconsistencies and implausibility in Taylor's testimony, and that his recorded recantation was "coherent and sounded natural; indeed, he sounded far more like a person telling the truth than someone reciting statements he had been told to make only a few minutes earlier." Weighing Doshier's testimony, the district court considered the fact that "she was consuming heroin multiple times a day during Earp's trial and when Foltz made the alleged threats," she was "emotionally overwrought" during the trial of her daughter's murderer, and it was implausible Foltz would have intimidated her given that her testimony "was not directly relevant to proving Earp's guilt." As to evaluating the assumed spoliation of evidence, the court considered and dismissed its impact: "The mere fact that Morgan lied on the stand does not mitigate any of the problems the court has identified with Taylor's testimony."

Conversely, it found Foltz and Milkey "to be credible witnesses at the evidentiary hearing" based on the coherency of their testimony. Accordingly, the district court held that Earp "failed to prove his prosecutorial misconduct claim by a preponderance of the evidence."

Earp appeals again. Only the prosecutorial misconduct claim is presented here. Thus, Earp's contentions focus solely on two alleged errors during the district court's 2014 evidentiary hearing on that issue. In order for us to remand, Earp must establish that the court clearly erred in finding that the State did not intimidate Taylor, or that further discovery was indispensable to developing the fact of witness intimidation. For if Earp cannot show by a preponderance of the evidence that witness intimidation occurred, he necessarily cannot prove that he was prejudiced and habeas relief warranting a new trial is necessary. *See Towery v. Schriro*, 641 F.3d 300, 307 (9th Cir. 2010).

We have jurisdiction under 28 U.S.C. § 2253(a), and we review *de novo* the denial of a petition for writ of habeas corpus. *Earp II*, 623 F.3d at 1074. The district court's decision to deny discovery is reviewed for abuse of discretion. *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997). "Factual findings and credibility determinations made by the district court in the context of granting or denying [a petition for writ of habeas corpus] are reviewed for clear error." *Larsen v. Soto*, 742 F.3d 1083, 1091–92 (9th Cir. 2013) (quoting *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004)).

## II

Earp first asserts the district court erred in denying his request for further discovery into the CDOJ's alleged spoliation of evidence. He contends that further

investigation into how the evidence came to be spoliated could support his witness intimidation claims. The district court, however, assumed for the purposes of the hearing that Earp was entitled to an adverse inference based on the State's spoliation for the limited purpose of assessing the witnesses' credibility, and correctly found that any link between that evidence established by the adverse inference (even if true) and the alleged witness intimidation was too attenuated. We hold that denying further discovery in light of that finding was not an abuse of discretion.[2] *See United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009) (en banc).

Under Rule 7 of the Rules Governing 28 U.S.C. § 2254, a district court may expand the record without holding an evidentiary hearing. *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005), *overruled on other grounds by Daire v. Lattimore*, 812 F.3d 766 (9th Cir. 2016). A habeas petitioner like Earp, however, "is not entitled to discovery as a matter of ordinary course," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), and he must demonstrate entitlement to an evidentiary hearing under the federal habeas statute, *Williams v. Taylor*, 529 U.S. 420, 430 (2000). We have previously held "a hearing is required if: '(1) [the petitioner] has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did not receive a full and fair opportunity to develop those facts.'" *Earp I*, 431 F.3d at 1167 (quoting

---

[2] In his reply brief, Earp asserts that the State has waived its arguments as to the district court's denial of further discovery, and as to the proper weight of the adverse inference against the State witnesses' credibility. *See United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015). Although it did not address Earp's arguments point-by-point, the State did address this issue by arguing that further discovery was unnecessary because the adverse inference was unrelated to the witness intimidation claim.

*Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004)).
"[A] court's denial of discovery is an abuse of discretion if
discovery is indispensable to a fair, rounded, development of
the material facts." *Jones*, 114 F.3d at 1009 (quoting *Toney
v. Gammon*, 79 F.3d 693, 700 (8th Cir. 1996) (internal
quotation marks omitted)).   "Just as bald assertions and
conclusory allegations do not afford a sufficient ground for
an evidentiary hearing, neither do they provide a basis for
imposing upon the state the burden of responding in
discovery to every habeas petitioner who wishes to seek such
discovery." *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir.
1987) (citing *Wacht v. Cardwell*, 604 F.2d 1245, 1246 n.2
(9th Cir. 1979)).

   In addition to conducting further discovery, a district
court also "has the broad discretionary power to permit a
[fact-finder] to draw an adverse inference from the
destruction or spoliation against the party or witness
responsible for that behavior." *Glover v. BIC Corp.*, 6 F.3d
1318, 1329 (9th Cir. 1993) (citing *Akiona v. United States*,
938 F.2d 158 (9th Cir. 1991)).   "[A] 'reasonable' inference
is one that is supported by a chain of logic, rather than . . .
mere speculation dressed up in the guise of evidence." *Juan
H. v. Allen*, 408 F.3d 1262, 1277 (9th Cir. 2005).

   Like undisclosed *Brady*[3] evidence, facts established
through an adverse inference must still be relevant and
material to a defendant's claim to warrant inclusion or
further investigation.   "Materiality turns on the [evidence]'s
potential, viewed as a matter of law to be decided by the trial
court, for affecting the course of the inquiry." *United States*

---

[3] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the
prosecution must disclose evidence that is both favorable to the accused
and material either to guilt or punishment).

*v. Fiorillo*, 376 F.2d 180, 184 (2d Cir. 1967) (citing *United States v. Winter*, 348 F.2d 204, 211 (2d Cir. 1965)). *See also* 1 McCormick On Evid. § 185 (7th ed. 2016) ("Materiality . . . looks to the relation between the propositions that the evidence is offered to prove and the issues in the case. If the evidence is offered to help prove a proposition that is not a matter in issue, the evidence is immaterial."); *United States v. Boshell*, 952 F.2d 1101, 1106 (9th Cir. 1991) (holding that evidence is only material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different") (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

Previously, we have disallowed the introduction of evidence or adverse inferences when they are not relevant to the party's claim. *See United States v. Laurins*, 857 F.2d 529, 538 (9th Cir. 1988) (affirming conviction when the government destroyed criminal evidence because the purported evidence "was not a central issue" to defendant's claim); *Farrow v. United States*, 580 F.2d 1339, 1360 (9th Cir. 1978) (denying further discovery because appellant failed to present more than conclusory allegations).[4] *But see Soo Park v. Thompson*, 851 F.3d 910, 927 (9th Cir. 2017) ("Materiality does not require incontrovertible evidence of

---

[4] Other circuits have also disallowed irrelevant or immaterial inferences or evidence when not pertinent to the party's claim. *See United States v. Ozuna*, 561 F.3d 728, 738 (7th Cir. 2009) (affirming district court's exclusion of evidence when it was not material to the defense case); *Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 923 (2d Cir. 1981) (reversing the district court when defendant's failure to produce certain evidence "does not establish, or help to establish, a prima facie case because it bears no logical relationship to a finding of age discrimination").

exculpation; to the contrary, evidence that tends to 'cast doubt' on the government's case qualifies as material.").

Here, Earp alleges that further discovery concerning the destruction of DNA evidence would allow him to bolster his claim of prosecutorial misconduct by Foltz and Milkey. He asserts four possible connections to be made. First, "evidence of past acts is admissible to show bias." Second, "[e]vidence regarding Foltz's or Milkey's involvement in the disappearance of material that might have proven Morgan's presence would tend [to] show they were part of an overall effort to suppress evidence of Morgan's involvement." Third, "[d]iscovery as to how and why Sheriff's deputy Biehn came to ask DOJ investigator Shore to obtain the evidence, or as to what Shore did with it and why, could lead, for example, to information indicating that either Foltz or Milkey, or both, were involved in obtaining or disposing of the evidence." And last, "Milkey had another connection with the accessing of the evidence that led to its disappearance: the request to give DOJ investigator Shore access to the napkin came from a fellow Los Angeles County Sheriff's Deputy, homicide detective Gerry Biehn." Weighing the evidence, the district court held that "there is not good cause to permit additional discovery in this case" because Earp received the adverse inference he desired and further discovery into the State's alleged spoliation of evidence would "not affect [the] decision of the remaining [witness intimidation] claim of Earp's habeas petition."

We agree with the district court's rationale. First, Earp received the adverse inference he desired for the purpose of assessing the witnesses' credibility: the district court, sitting as fact-finder, assumed in applying it "that the missing evidence showed Morgan was at the scene of the crime on the day in question." Second, because Earp's remaining

habeas claim concerns alleged witness intimidation, he must make some "plausible showing" that the adverse inference evidence "would have been material and favorable" to his prosecutorial misconduct allegations. *Cf. United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982). He fails to do so. Earp's assertion that further discovery on the CDOJ's alleged spoliation of evidence could show bias, a hidden connection between Foltz, Milkey, and the CDOJ, or an overall scheme to suppress evidence, are too attenuated and too speculative. He simply states that his motion should be granted "[g]iven the reasonable possibility of uncovering evidence that Foltz and Milkey were somehow connected with the napkin's disappearance." This type of bald assertion to fish for evidence that may support the defense theory is not a "reasonable inference" and appears more like "mere speculation dressed up in the guise of evidence." *Juan H.*, 408 F.3d at 1277. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (holding that mere allegations of a vast conspiracy to discriminate were not plausible and did not sufficiently allege a cause of action).

This is exactly the kind of fishing expedition we are admonished not to permit. *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[C]ourts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation."). As the district court properly concluded, there is no reasonable connection between whether Morgan was at the scene of the crime and whether Foltz or Milkey intimidated witnesses. Further discovery on that matter would only unnecessarily burden the State. Earp's meager conjecture suggests that he *might possibly* discover a connection that *might possibly* exist, which *might possibly* change the credibility of the witnesses, if he were only allowed discovery. But that speculation does not change the

fact-finder's ruling on the credibility of the witnesses, overcome the "broad deference" we afford to district courts on supervising discovery, and is not "*indispensable* to a fair, rounded, development of the material facts." *Jones*, 114 F.3d at 1009 (emphasis added). The district court properly denied further discovery.

## III

Earp next argues that the district court improperly weighed the credibility of Foltz, Milkey, Taylor, and Doshier, especially in light of the adverse inference drawn against the State. Because we "cannot substitute [our] own judgment of the credibility of a witness for that of the fact-finder," *United States v. Durham*, 464 F.3d 976, 983 n.11 (9th Cir. 2006), and the record shows that the district court carefully and thoughtfully weighed all of the testimony, we hold that the district court did not clearly err in weighing the credibility of the witnesses in light of the evidence adduced at the hearing.

We have repeatedly held that "substantial government interference with a defense witness's free and unhampered choice to testify amounts to a violation of due process." *United States v. Vavages*, 151 F.3d 1185, 1188 (9th Cir. 1998) (quoting *United States v. Little*, 753 F.2d 1420, 1438 (9th Cir. 1984)). In a habeas case, the petitioner must establish the prosecutor's misconduct by a preponderance of the evidence. *United States v. Juan*, 704 F.3d 1137, 1142 (9th Cir. 2013) (citing *Vavages*, 151 F.3d at 1188). In addition to proving that the prosecutor engaged in witness intimidation, a petitioner seeking habeas relief must also prove that he was prejudiced by that intimidation. *Towery*, 641 F.3d at 307 ("A constitutional violation arising from prosecutorial misconduct does not warrant habeas relief if the error is harmless."). *See also Sandoval v. Calderon*,

241 F.3d 765, 778 (9th Cir. 2000) ("Our finding of constitutional error does not end the inquiry, however. To warrant habeas relief, [the petitioner] must show that the prosecutor's improper argument 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993))).

Sitting as fact-finder, the trial court judge is tasked with weighing and making factual findings as to the credibility of witnesses. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985). We review those findings and credibility determinations for clear error, *Larsen*, 742 F.3d at 1091–92, which "does not vest[] us with power to reweigh the evidence presented at trial in an attempt to assess which items should and which should not have been accorded credibility," *Mondaca-Vega v. Lynch*, 808 F.3d 413, 428 (9th Cir. 2015) (quoting *Cataphote Corp. v. De Soto Chem. Coatings, Inc.*, 356 F.2d 24, 26 (9th Cir. 1966)). Under Federal Rule of Civil Procedure 52(a)(6), "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." In weighing the credibility of witnesses, "Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575 (citing *Wainwright v. Witt*, 469 U.S. 412 (1985)). Although credibility determinations are not unreviewable,

> when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a

coherent and facially plausible story that is
not contradicted by extrinsic evidence, that
finding, if not internally inconsistent, can
virtually never be clear error.

*Id.* at 575.

Here, the district court heard live testimony from all four
witnesses, and found that the State witnesses were credible
and the defense witnesses were not. Earp contends the court
clearly erred by: (1) improperly weighing spoliation
evidence as to Foltz and Milkey's credibility; (2) failing to
consider Taylor a "neutral, disinterested" witness;
(3) discounting Doshier's motivation as the victim's mother;
and (4) disregarding Foltz and Milkey's alleged motivations
and inconsistencies.

But in making its determination rejecting those
contentions, the district court cited considerable bases to
discredit both Taylor and Doshier's testimony, dismissed the
impact of the assumed adverse inference urged by the
defense, listened to the tape recording of Taylor's
recantation, and credited Foltz and Milkey's testimony. In
light of the extremely deferential standard of review, and the
district court's consistent and appropriate credibility
findings, which are well supported and articulated in the
record, we affirm the district court's dismissal of Earp's
prosecutorial misconduct claim. We agree that whether
Morgan was at the scene of the crime is minimally probative
at best to Earp's allegations of witness intimidation. Earp
has not established the nexus. Accordingly, Earp cannot
show that his due process rights were violated by the State,
or that he was prejudiced and would be entitled to a new trial.
*See Towery*, 641 F.3d at 307. The district court's dismissal

of Earp's remaining habeas claim on the merits is
**AFFIRMED.**