**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JESSICA HOLMES,

          Petitioner-Appellant,

v.

WALTER MILLER,

          Respondent-Appellee.

No. 17-15604

D.C. No.
2:11-cv-02710-JKS-KJN

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
James K. Singleton, District Judge, Presiding

Argued and Submitted March 25, 2019
San Francisco, California

Before: BYBEE, CHRISTEN, and WATFORD, Circuit Judges.

This case returns to our court after remand to the Eastern District of

California for an evidentiary hearing. Petitioner Jessica Holmes is serving a

sentence of life without the possibility of parole (LWOP). In 2011, she filed a

petition for a writ of *habeas corpus* seeking relief pursuant to 28 U.S.C. § 2254.

---

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Holmes alleged that she rejected two plea offers because her trial attorney failed to explain that a conviction for special circumstances murder would result in the mandatory imposition of a life sentence without the possibility of parole under California law. We first considered Holmes's petition in 2015. We remanded to the district court and directed it to conduct an evidentiary hearing. *See Holmes v. Johnson*, 617 F. App'x 758 (9th Cir. 2015).[1]

The district court denied Holmes's petition for the second time on remand, and she appeals that decision. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm the district court's judgment.

1. Holmes first contends that the district court improperly cabined the scope of our prior remand order. We have "repeatedly held, in both civil and criminal cases, that a district court is limited by this court's remand in situations where the scope of the remand is clear." *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007) (quoting *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006)). Holmes argues that the scope of our remand order broadly encompassed her attorney Jesse Ortiz's strategic advice and his professional competency leading up to her trial. *See Holmes*, 617 F. App'x at 764. The record shows otherwise.

---

[1] Because the parties are familiar with the facts and arguments, we recite them only as necessary.

The remand order directed the district court to take evidence "regarding the ineffective assistance of counsel claim Petitioner raised in her pro se petition in the California Superior Court, i.e. that counsel did not inform her that she faced a mandatory life sentence without the possibility of parole." *Id.* The same order made clear that any claims that "counsel's strategy during trial amounted to ineffective assistance of counsel because counsel had a flawed understanding of the case" were "entirely new and unexhausted." *Id.* at 763 n.6. We conclude that the district court correctly understood the scope of our remand.

2.      Holmes also challenges the district court's evidentiary rulings, which we review for abuse of discretion. *See Campbell v. Wood*, 18 F.3d 662, 685 (9th Cir. 1994) (en banc). Primarily, Holmes contends that the district court should have admitted evidence she proffered to rebut the presumption that Ortiz acted competently during plea negotiations and in her subsequent trial. For the reasons we have already explained, Ortiz's general competence and the quality of his strategic advice were not at issue on remand.

Ortiz's credibility, however, certainly *was* at issue. Succinctly put, this case turned on whose version of events—Holmes's or Ortiz's—the district court believed. According to Holmes, Ortiz told her that the potential penalties "could" include death or LWOP, she denied that Ortiz explained that death or LWOP were

3

the only options that would be available to the sentencing court if she was convicted of special circumstance murder, and she testified that Ortiz told her there was no difference between the State's offer and the mandatory sentence she would receive if convicted. Holmes also testified that she would have accepted the State's plea offer if she had understood that she would not be eligible for parole if convicted. In sharp contrast, Ortiz repeatedly testified that he told Holmes LWOP was the only sentence that could be imposed if she was convicted.[2] Ortiz also testified that he told Holmes she would be eligible for parole if she pleaded guilty—in other words, he denied equating the mandatory LWOP sentence to the State's plea offers.

Some of the evidence that Holmes proffered was probative of Ortiz's character for truthfulness, or lack thereof. The magistrate judge's determination that this evidence was irrelevant within the meaning of Rule 401 was error. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Holmes's proffered evidence

---

[2]     Both witnesses testified that Holmes understood the State had agreed it would not seek the death penalty.

certainly made a fact at issue (whether Ortiz actually gave her incorrect advice concerning her sentencing exposure) more likely to be true.

However, the district court also decided pursuant to Rule 403 that an inquiry into Ortiz's prior disciplinary history and/or into allegations that he lacked candor in representations he made to other courts would have "resulted in a series of mini-trials concerning the prior events" that would have "unduly complicated the issues." Rule 403 is a flexible standard and, as a general matter, we defer to the trial court's sound exercise of its discretion in managing the mode and presentation of evidence. *See, e.g.*, *United States v. Lloyd*, 807 F.3d 1128, 1152 (9th Cir. 2015) ("A district court's Rule 403 determination is subject to great deference, because 'the considerations arising under Rule 403 are susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues.'") (quoting *United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009) (en banc)). Here, Holmes repeatedly argued that her proffered evidence should be admitted to rebut the presumption that Ortiz's representation was competent. As explained, the competence of Ortiz's representation was not an issue before the magistrate judge, but our own review of the record reveals at least one instance where Holmes argued that her proffered evidence was relevant because it bore on Ortiz's credibility. Offered for this purpose, the evidence was relevant, but we

cannot say the district court abused its discretion by excluding it pursuant to Rule 403 because the proffered evidence related to representations Ortiz made in other cases, not this one. Such evidence likely *would* have resulted in mini-trials.

3. Finally, Holmes urges us to vacate the district court's factual findings with respect to what Ortiz actually told her concerning her sentencing exposure. "Factual findings and credibility determinations made by the district court in the context of granting or denying [a petition for writ of habeas corpus] are reviewed for clear error." *Earp v. Davis*, 881 F.3d 1135, 1142 (9th Cir. 2018) (quoting *Larsen v. Soto*, 742 F.3d 1083, 1091–92 (9th Cir. 2013)) (alteration in original). A district court's factual finding is clearly erroneous if it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from facts in the record." *Crittenden v. Chappell*, 804 F.3d 998, 1012 (9th Cir. 2015) (quoting *Hinkson*, 585 F.3d at 1262 (internal quotation marks omitted)). This standard requires "the reviewing court [to] give due regard to the trial court's opportunity to judge the witnesses' credibility." *Earp*, 881 F.3d at 1145 (quoting Fed. R. Civ. P. 52(a)(6)).

Holmes's petition is defeated by two of the district court's factual findings: (1) that "Ortiz told [Holmes], *and she understood*, that if she were convicted of special circumstance murder the only sentence she could receive was life without

6

the possibility of parole"; and (2) "Ortiz did not tell petitioner she would receive the same sentence if she pled guilty or was convicted at trial." (emphasis added). We are not free to decide the facts ourselves. In view of the trial court's superior opportunity to hear the live witness testimony and assess the credibility of the witnesses, we cannot say that these two critical findings are clearly erroneous. *See id.* Because Holmes did not establish the requisite factual predicate for her ineffective assistance of counsel claim, we affirm the dismissal of her petition.

The outcome of this appeal is driven largely by the applicable standard of review, but the result is deeply troubling. Holmes was eighteen years old when she participated in the charged conduct. Holmes's then-boyfriend, Cory Schroeder, and another man, Joseph Johnson, planned and executed a series of robberies and Holmes served as their driver. The final robbery ended tragically; Johnson shot and killed a gas station clerk while Holmes waited in the car outside. Before trial, the State extended two settlement offers to Holmes but she rejected both of them. The first was for an indefinite sentence of eighteen years to life in prison, with the possibility of parole. The second offer was for an indefinite sentence of sixteen years to life with the possibility of parole.

Holmes and Ortiz apparently convinced themselves that Holmes had a viable defense to present at trial, even though she had given several highly incriminating

statements to the police in which she confessed to much of the charged conduct. We do not substitute our judgment for the trial court's finding that Ortiz testified credibly, nor its finding that he advised Holmes about her sentencing exposure, but the jury's guilty verdict was easily foreseeable. Indeed, because it was virtually certain that Holmes would be convicted if she proceeded to trial, and because she faced a *mandatory* LWOP sentence if convicted, the choice to go to trial is fairly described as irrational.

It appears that Holmes was struggling with an addiction at the time she committed these crimes, and that she may have been motivated to finance her drug habit. It is also very likely that she was heavily influenced by her relationship with Schroeder, and it is undisputed that her role was limited to serving as Schroeder and Johnson's getaway driver. Schroeder, who was scheduled for trial after Holmes was convicted, pleaded no contest and received a sentence of fifteen years to life.

At this point, Holmes has already served twelve years of her sentence. If she had accepted the State's final offer, she would be eligible for parole in four years. Instead, absent extraordinary relief in the form of a commutation or pardon, she will spend the rest of her natural life in the custody of the State of California.

Fortunately, it is the rare case where our constitutional obligation to remain within the confines of our appointed role diverges from our clear sense of justice. We regret that this is such a case.

The judgment of the district court is **AFFIRMED.**